583 So.2d 73 (1991)
CANTWELL MACHINERY COMPANY, Plaintiff-Appellee,
v.
The BALLARD AGENCY, INC., Defendant-Appellant.
No. 22536-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 1991.
*74 McLeod, Swearingen, Verlander, Dollar, Price & Noah, Monroe, by John C. Laird, for defendant-appellant.
Nesser, King & LeBlanc, New Orleans, by Liane C. King, for plaintiff-appellee.
Before PRICE, BALLARD and CLARK (Ad Hoc), Judges.
PRICE, Judge.
This is an appeal from the judgment rejecting an application for an order to stay the enforcement of a foreign judgment which had been recognized and made executory in this state under the provisions of LSA-R.S. 13:4241 et seq. Having found no error in the judgment appealed, we affirm.

PROCEDURAL BACKGROUND
In July, 1988, Cantwell Machinery Company, an Ohio company, sued appellant, Ballard Agency, Inc., of Monroe, Louisiana, in the court of Common Pleas of Franklin County, Ohio, alleging that Ballard had wrongfully terminated an insurance binder affording extended warranty coverage on machinery sold by Cantwell. Ballard received notice and a copy of the complaint by certified mail at its Monroe office on August 3, 1988. As no responsive pleadings were filed by Ballard in the Ohio court, a default judgment against it was rendered on April 21, 1989.
Pursuant to the "Enforcement of Foreign Judgments Act", LSA-R.S. 13:4241, the Fourth District Court for Ouachita Parish, on August 8, 1989, ordered the judgment of the Ohio court in the amount of $60,170.61 be recognized and made executory in Louisiana.
On September 6, 1989, Ballard filed a rule to stay execution of the Ohio judgment and obtained an order staying execution pending further orders of the court. Trial of this rule was not until May 30, 1990, at which time the trial court rejected the motion to stay the execution of the Ohio judgment based on its finding that the court was required to give full faith and credit to the judgment of another state if it was shown that the other state had jurisdiction over the parties. The court found that Ballard had not borne the burden of showing that it was not subject to the jurisdiction of the Ohio court.
Although the trial court rejected Ballard's application for a judgment ordering the stay of execution of the April 21, 1989 Ohio judgment, it did continue the ex parte stay order obtained by Ballard pending any application for and disposition of writs to this court.
On this appeal, Ballard contends the trial court erred in two respects. First, that the court was in error in finding sufficient minimum contacts to have existed by Ballard in the State of Ohio making it subject to personal jurisdiction in that state. Secondly, that the trial court erred in its August 8, 1989 ex parte ruling making an April 21, 1981 Ohio court judgment executory when there was no copy of such judgment authenticated in accordance with an Act of Congress or this state introduced with the ex parte petition as required by LSA-R.S. 13:4242.
In answer to Ballard's appeal, Cantwell points out that there was an obvious typographical error in the order of August 8, 1989 making an April 21, 198 1 judgment of the Ohio court executory whereas the copy of the judgment attached to the petition and all references to said judgment in the petition showed it to be an April 21, 198 9 judgment that was asked to be recognized. This is the basis of Ballard's second assignment of error. Cantwell therefore asks that this error be ordered corrected to reflect the correct date of April 21, 1989 in the order appealed.
Cantwell also complains of the trial court delaying its right to execution of the judgment which had been recognized by continuing the initial ex parte stay order pending a decision of the Court of Appeal on any application for supervisory writs that might be filed by defendant, Ballard. This complaint has now become moot as the application for writs by Ballard has been denied by an order of the Court of Appeal in No. 22,330-CW, filed on November 20, *75 1990. Since the stay order has expired by its own terms, we see no reason to consider Cantwell's request for a modification of the trial court's judgment because of the alleged error in granting such a stay of execution.
Therefore, the issues presented for our determination are whether the Ohio court had personal jurisdiction over Ballard to entitle its judgment rendered on April 21, 1989, the protection of the full faith and credit provided by Article 4, Section 1 of the United States Constitution and whether the ex parte judgment of the Ouachita Parish court recognizing the judgment should be amended to correct its erroneous reference to a judgment dated "April 21, 1981" instead of "April 21, 1989".

Was There Personal Jurisdiction Over Ballard?
The factual background giving rise to Ballard's contacts with the State of Ohio as shown in the record is as follows.
In 1986 and 1987, Mr. John O. Ballard, president and owner of The Ballard Agency, Inc., began to investigate the feasibility of entering an additional insurance field to the usual commercial casualty and property coverage the agency then pursued. He felt there was a national market for extended warranty coverage and he began seeking an insurance company to underwrite such coverage for this market. After considerable searching, he obtained an agency contract for this purpose with Pelican State Insurance Company in Louisiana.
Ballard knew a Georgia agent and broker, T.M. Smith Company, that had engaged in writing this type coverage through American Universal Insurance Group and had learned that this insurer had recently ceased writing this coverage.
Through negotiation with T.M. Smith, Ballard obtained a list of customers for which this coverage had previously been written by Smith. To take advantage of this potentially ready-made market, Ballard prepared a number of insurance binders committing Pelican State to provide this coverage for the customers on the list given Ballard by Smith. The binders were mailed by Smith to the various customers along with a letter explaining that this coverage was now being written through the Ballard Agency in Monroe, Louisiana with Pelican State as the insurer. One of the binders was sent to Cantwell Machinery Company in the State of Ohio. Cantwell was a previous customer of Smith. This binder was received by Cantwell sometime in November, 1987. In March, 1988, Pelican State ordered Ballard to cancel all binders that had been issued committing Pelican to extended warranty coverage. Ballard wrote Cantwell a letter advising that this coverage was cancelled insofar as Pelican State was concerned but solicited Cantwell's continued business if another insurer could be obtained. In July, 1988, Cantwell filed suit against Ballard, Pelican State, T.M. Smith Company and American Universal Insuror Group in the Court of Common Pleas, Franklin County, Ohio. As against Ballard, the complaint was that the binder issued by Ballard through Pelican State was wrongfully cancelled and that Cantwell had been damaged because of this.
Ballard was notified of this action by certified mail on August 3, 1988. As no appearance or filing had been made by Ballard in the Ohio court, on April 21, 1989, a default judgment was rendered against Ballard in response to a motion by Cantrell. The validity of this judgment which was subsequently made executory in Ouachita Parish is the basis of this proceeding.

Applicable Law
A court of one state must give full faith and credit to a judgment of another state unless it is shown that the rendering state did not have jurisdiction over the parties or the subject matter. United States Constitution; Art. 4, Sec. 1. Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1941); Swain v. Swain, 339 So.2d 453 (La.App. 1st Cir.1976); Crichton v. Succession *76 of Crichton, 232 So.2d 109 (La.App. 2d Cir.1970).
In determining the question of jurisdiction of the foreign court, the law of the forum state which rendered the judgment is the applicable law for resolution of this issue. McMillan v. Noble, 538 So.2d 714 (La.App. 4th Cir.1989); Fountain v. Fountain, 365 So.2d 1139 (La.App. 3rd Cir.1978).
Also, there is a presumption the judgment of the sister state is valid and the burden of showing the judgment is invalid for lack of jurisdiction rests with the party attacking the judgment. McMillan v. Noble, supra.

Resolution of Issues
Applying the foregoing law to the facts shown by the record we do not find that the trial judge erred in holding that Ballard had not borne the burden of showing that it was not subject to the Ohio court.
The relevant law of the state of Ohio on this question is set forth in the decision of the Federal District Court in Reliance Electric Company v. Charles Luecke, et al, 695 F.Supp. 917, (1988). We quote in pertinent part as follows:
"the Court in this case must look to the long-arm statute of the State of Ohio to determine whether the defendant is amenable to service to warrant the exercise of personal jurisdiction. Ohio's longarm statute, Ohio Rev. Codes 2307.382 provides in pertinent part that:
(A) A Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
(1) Transacting any business in this state; ...
One has transacted business in Ohio when the obligations created by a defendant or by business operations set in motion by the defendant have a realistic impact on the commerce of this state. Southern Machine Co. [v. Mohasco Industries, Inc., 401 F.2d [374] at 283-83 [(6th Cir.1968) ]. The Court may apply subsection (A)(1) to a single act of a defendant committed within or affecting Ohio.
In order to ascertain whether the exercise of jurisdiction is proper under a state statute, the Court must determine: 1) whether the exercise of in personam jurisdiction is permitted under the state statute, and 2) if so, whether the extension of such jurisdiction violates notions of fair play encompassed by the due process clause of the fourteenth amendment....
It is well established in the Sixth Circuit that this section of the Ohio longarm statute has extended the in personam jurisdiction of courts which sit in Ohio to its constitutional limits.... Thus, the sole question becomes whether this Court may constitutionally exercise in personam jurisdiction over a particular defendant under Ohio's long-arm statute.
Where the Court's jurisdiction is predicated upon a single act of a defendant, the Court must undertake a three-fold analysis: 1) Has defendant purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state?, 2) did the cause of action arise from defendant's actions there?, and 3) did the acts of defendant have a sufficiently substantial connection with the forum state to make the exercise of jurisdiction over defendant reasonable? ...
Where the first two prongs of the test are met an inference arises that the third element, fairness, is also present.... Only in an unusual case will the third criterion not be found when the first two criteria are met. This final criterion incorporates the flexibility of the test of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which requires that one may be subject to in personam jurisdiction only if minimum contacts with the forum state are present so that maintenance of the *77 suit does not offend traditional notions of fair play and substantial justice. In-Flight Devices Corp. [v. Van Dusen Air., Inc.,] 466 F.2d [220] at 232 [6th Cir.1972].
The factors to be considered in determining whether the third prong of the test is met include whether the individual defendant should foresee the possibility of a foreign suit.... Where the non-resident party has a contract with a resident of Ohio, that may be evidence of the non-resident's expectation that it may be involved in litigation in Ohio.... Further, no particular type of physical contact is required as a jurisdictional prerequisite. It is not necessary that defendant be physically present in Ohio.
Another factor to be considered is whether the defendant was passive or whether it actively participated in the transaction in question.... A further aspect of the fairness consideration is the extent of Ohio's interest in the controversy.... Ohio has an interest in resolving suits brought by one of its residents and has a substantial interest in seeing that its residents get the benefit of their bargains.... Holding a defendant answerable for its failure to perform obligations imposed upon it by a contract is consistent with the Ohio policy of securing to individuals the benefit of their bargains...."
Ballard argues in brief to this court that it did not have sufficient minimum contacts with Ohio to make it subject to the jurisdiction of the Ohio courts. It contends the only contact was the single act of mailing a notice of cancellation of the binder which had never been accepted by Cantwell by payment of a premium to either Ballard or the insuror, Pelican. Ballard further contends that the binder of Pelican State although prepared by Ballard as agent for its disclosed principal, Pelican State, was sent to Cantwell by T.M. Smith Company and that under these circumstances it has not been shown that Ballard transacted any business or executed any contract in the State of Ohio which would submit it to personal jurisdiction under the Ohio Long Arm Statute or meet the requirements of constitutional due process.
Ballard also contends Cantwell's petition in the Ohio court did not allege any facts which would have stated a cause of action against it as a general agent nor was it shown that the binder which was sent to Cantwell was ever accepted by it by payment of the premium. Therefore, no contract was consummated in Ohio which could have subjected Ballard to the jurisdiction of the Ohio court. Ballard further contends under the facts shown, it could not, as Pelican's agent, have reasonably expected to have been sued in Ohio as a result of its limited activities there.
Although Ballard may be correct in its argument that as a general rule an agent is not a party to the contract between the insurer and the insured and therefore not liable for any claims in connection with the issuance of the policy, Ballard's argument is not persuasive in this instance in light of the evidence in the record. The testimony of John O. Ballard, owner of the Ballard Agency, Inc., shows that he was the activator of the plan to engage in the sale of the extended warranty policies on a national scale. He contacted several underwriters in an effort to find an insurer willing to underwrite this type coverage. Ballard was hopeful of taking over the former customers of the T.M. Smith Company who apparently was having difficulty keeping an underwriter for this type coverage.
Ballard's real intentions are best shown by his letter to Cantwell cancelling the binder of Pelican State which reads as follows:
March 23, 1988
Cantwell Machinery
3180 Valleyview Drive
Columbus, Ohio 43204
The binder (see copy attached) that we mailed to you in November of 1987 is cancelled. We are regrouping our production effort through T.M. Smith, Inc. changing from a mass method to a more *78 individual method. The idea, through personal contact, is to dispel confusion and uncertainties, and to restore confidence.
The cancellation of the binder does not mean that we do not want to do business with you. On the contrary, we do want your business. We have a good product. The cost of our mechanical breakdown contract is affordable, but most important, we have a safe market that we want to present in your state in an acceptable fashion.
Contact us ......... either here at X-XXX-XXX-XXXX or at T.M. Smith, Inc. at X-XXX-XXX-XXXX. We want your warranty business.
Yours very truly,
John O. Ballard
The testimony of Ballard also shows that the reason Pelican State ordered Ballard Agency to cancel all binders issued was that Pelican was not set up to handle the volume of this type coverage that Ballard had generated and that Pelican had not qualified to do business in Ohio at that time. Ballard had prepared binders to be sent to an extensive list of customers located throughout the United States and Canada prepared by T.M. Smith Company.
From the letter set forth above, it can be seen that Ballard intended to do business in Ohio and hoped to continue to do so if another underwriter could be obtained.
When Ballard's activities are measured under the criteria set forth in Reliance Electric Co. v. Charles Luecke, supra, the pertinent portions of which are heretofore quoted in this opinion, it is clear that he was subject to the Ohio Long Arm Statute and was afforded Constitutional due process. Ballard solicited Cantwell's extended warranty insurance business and impacted commerce in Ohio by having the binder sent to the Ohio resident. This solicitation had an impact on Cantwell, an Ohio resident. If the business operations set in motion by a party have a realistic impact on commerce in Ohio, then it is assumed that the party has transacted business in the state. Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir.1968). We therefore find the trial court was correct in rejecting Ballard's application for an order staying the enforcement of the Ohio judgment.
With regard to appellant's second assignment of error, we note that the date in the trial court's order of August 8, 1989, which erroneously referred to the date of the foreign judgment ordered recognized as April 21, 1981 instead of April 21, 1989, is without question a simple typographical error. By reference to the description of the judgment in the ex parte petition requesting recognition and the authenticated copy attached, it is obvious that the order intended to recognize and make executory the judgment dated April 21, 1989, and this court concludes that the order dated August 8, 1989 which was appealed from, has this effect.
Accordingly, we hereby correct the error in the August 8, 1989 order, so that the erroneous reference to an April 21, 1981 Ohio judgment is changed to refer to an April 21, 1989 judgment. LSA-C.C.P. Art. 2164. See, also, Official Revision Comment (d) under LSA-C.C.P. Art. 1951.

CONCLUSION
The judgment appealed is affirmed. The April 21, 1981 date in the August 8, 1989 order is hereby changed to April 21, 1989. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED; ORDER AMENDED AND AFFIRMED.