930 So.2d 144 (2006)
Calvena WINSTON
v.
David MILLAUD.
No. 2005-CA-0338.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 2006.
*147 Gary S. Brown, Gary S. Brown, LLC, New Orleans, Counsel for Plaintiff/Appellant.
Jerome J. Pellerin, New Orleans, Counsel for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, and Judge EDWIN A. LOMBARD).
CHARLES R. JONES, Judge.
The Appellant, Calvena Winston, appeals the judgment of the district court staying the enforcement of a Tennessee judgment ordering the Appellee, David Millaud, to pay $140,200.00 in past due child support and $2,065.40 per month in ongoing child support, and thus refusing to give the Tennessee judgment full faith and credit under Louisiana law. For the following reasons, we AFFIRM.
On November 18, 1991, the Juvenile Court of Davidson County, Tennessee (hereinafter "Tennessee Juvenile Court") entered an order declaring David Millaud the father of the minor child, David Winston, and reserving the setting of child support. At the time this order was entered, Mr. Millaud, Ms. Winston and the minor child were all residents of the State of Tennessee.
*148 Two years later, Mr. Millaud moved from Tennessee and went to reside in the State of California. Subsequently, Ms. Winston and the minor child moved from Tennessee and also went to reside in the State of California. The relationship between the parties ended, and while all parties still resided in the State of California, Ms. Winston subsequently filed a Petition to Set Child Support (hereinafter "Petition") in the Tennessee Juvenile Court. According to the record, the Petition was served via Tennessee's General Long Arm Statute on Mr. Millaud at his home in California.
The record also reflects that Mr. Millaud then filed an answer into the record of the proceedings before the Tennessee Juvenile Court objecting to the court's subject matter jurisdiction, as well as to its personal jurisdiction over him. We note that Mr. Millaud also acknowledged in his answer that he was "legally responsible for supporting my child." He also stated in his answer that he was in the process of filing a proceeding in the State of California to set child support, custody, and visitation. The record reflects that Mr. Millaud asked the Tennessee court to give him time to file a similar proceeding in the State of California, arguing that the California court had jurisdiction over the matter pursuant to the Uniform Child Custody Jurisdiction Law (hereinafter "UCCJA").[1] It does not appear from the record that Mr. Millaud ever filed such proceedings.
Approximately one year after the Petition was filed, Mr. Millaud moved from California and took up residence in the State of Louisiana. One year later, Ms. Winston and the minor child moved from California and took up residence in the State of Georgia. Subsequently, Ms. Winston caused her previously filed Petition to be re-set for hearing on the docket of the Tennessee Juvenile Court. The matter was re-set for April 19, 2002.
Mr. Millaud concedes in his brief that he was notified of Ms. Winston's Motion to Re-Set her Petition for hearing via certified mail at his residence in the State of Louisiana. He further acknowledges in his brief that he engaged Tennessee counsel, who while not submitting to personal jurisdiction in Tennessee again filed a response objecting to both the subject matter and personal jurisdiction of the Tennessee Juvenile Court. Apparently, the April 19, 2002, hearing date was postponed and eventually re-set for November 22, 2002. Mr. Millaud argues that the Case Disposition Sheet of the Tennessee Juvenile Court indicates that the hearing set for November 22, 2002, was also continued to December 20, 2002, and that Ms. Winston's attorney was to draft an order to that effect, which was to be served upon Mr. Millaud's Tennessee counsel. Mr. Millaud's counsel states that he never received any such notice.
The record shows that on December 16, 2002, the Tennessee Juvenile Court entered an order stating that the matter had been heard on November 22, 2002, and that after considering the affidavit of Ms. Winston, the Statement of Ms. Winston's attorney, the response filed by Mr. Millaud, and the record as a whole, the court found that the Tennessee Juvenile Court had jurisdiction over the matter; thus, the Petition to Set Child Support was set for December 20, 2002. The court apparently rejected Mr. Millaud's argument that the Tennessee court lacked jurisdiction to hear *149 the matter despite the absence of Mr. Millaud or his counsel.
The record reflects that the trial on child support was held on December 20, 2002, in the Tennessee Juvenile Court. The Tennessee Juvenile Court found in favor of Ms. Winston and accordingly entered judgment ordering Mr. Millaud to pay Ms. Winston ongoing child support in the amount of $2,065.40 per month beginning on December 27, 2002, as well as past due arrearages in the amount of $140,200.00.
As evidenced by the Affidavit of the Clerk of Court for the Tennessee Juvenile Court, there exists no record of the testimony taken and/or evidence received in support of the order rendered and/or in opposition to Mr. Millaud's objection to personal and subject matter jurisdiction.
Due to gaps in the record, it is unclear how the child support matter was set for December 20, 2002, who was notified of the trial or the mode of the notification. Accordingly, we find that the Tennessee Juvenile Court lacked personal jurisdiction over Mr. Millaud because the record is void of any evidence that he had been properly notified of the December 20, 2002, hearing, although the record does show that a copy of the court's judgment was mailed to Mr. Millaud's counsel on December 24, 2002. The Tennessee Juvenile Court judgment became and is now a final judgment.
It appears from the record that Mr. Millaud did not comply with the Tennessee judgment; thus, Ms. Winston filed a petition on February 13, 2004, in Orleans Parish, the present domicile of Mr. Millaud, seeking that the Tennessee judgment be given full faith and credit by the Civil District Court of Orleans Parish, State of Louisiana. Mr. Millaud then filed an action to stay the enforcement of the Tennessee judgment that was granted by the district court on September 7, 2004. This timely appeal follows.
Ms. Winston asserts that the district court erred in allowing the collateral attack on, and not giving full faith and credit to, the Tennessee Juvenile Court judgment that made past due and continued child support amounts executory. Moreover, Ms. Winston contends that the district court erred in finding that Mr. Millaud met his burden of proof that the Tennessee Juvenile Court lacked jurisdiction. We disagree and find that the district court did not err in failing to give full and credit to the Tennessee Juvenile Court judgment because the court lacked subject matter jurisdiction over this matter. We also find that there is insufficient evidence that the Tennessee court had personal jurisdiction over Mr. Millaud.
At issue is whether the evidence produced established that Tennessee courts had personal jurisdiction[2] over Mr. Millaud and subject matter jurisdiction[3] over the matter. While the district court's factual findings are subject to the manifest error standard of appellate review, jurisdiction itself is a question of law subject to de novo review. Sunrise Shipping Agency, Inc. v. Universal Maritime Services, Ltd., 96-2703 (La.App. 4 Cir. 10/3/97), 700 So.2d 1135, 1137, citing Salley v. Colonial *150 Marine Industries, Inc., 95-2215 (La.App. 4 Cir. 9/11/96), 680 So.2d 1242. Mr. Millaud argues that the court lacked personal jurisdiction over him and subject matter jurisdiction over the issue; thus, we find that there are questions of law and will review de novo.
On legal issues, the appellate court gives no special weight to the findings of the district court, but exercises its constitutional duty to review questions of law and renders judgment on the record. Cacamo v. Liberty Mutual Fire Ins. Co., XXXX-XXXX (La.App. 4 Cir. 9/29/04), 885 So.2d 1248, 1255, citing Gonzales v. Xerox Corp., 320 So.2d 163, 165 (La.1975). Thus, in such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. Andrews v. Dufour, XXXX-XXXX (La.App. 4 Cir. 6/2/04), 882 So.2d 15, 21; See also, O'Niell v. Louisiana Power & Light Co., 558 So.2d 1235, 1238 (La.App. 1 Cir.1990); Conoco, Inc. v. Tenneco, Inc., By and Through Tennessee Gas Pipeline Co., 524 So.2d 1305 (La.App. 3 Cir.1988), writ denied, 525 So.2d 1048 (La.1988).
Our first inquiry is whether Mr. Millaud is legally entitled to collaterally attack the judgment of the Tennessee Juvenile Court on the basis of jurisdiction.
Ms. Winston relies on Essex Crane Rental Corp. v. D & L Machine Works, 93-1656 (La.App. 3 Cir. 10/5/94), 643 So.2d 913, writ denied, 94-2742 (La.1/6/95), 648 So.2d 932, to support her position that Mr. Millaud cannot collaterally attack jurisdiction in the district court. In Essex, a Louisiana defendant was sued in Texas and filed pleadings in the Texas court that placed the question of personal jurisdiction directly at issue. Essex, 643 So.2d at 915. The defendant was properly notified and given the opportunity by the Texas court to litigate the jurisdiction issue but failed to appear for the trial on that issue. A default judgment was then taken against him. This Court concluded that under those circumstances, he was not entitled to collaterally attack the Texas judgment on jurisdictional grounds. Id.
Unlike in Essex, Mr. Millaud raised the issue of jurisdiction in Tennessee, but was never notified and given an opportunity by the Tennessee court to litigate the jurisdictional issues. Thus, we find Essex to be distinguishable from the case at bar.
Ms. Winston also cites Allenberg Cotton Company, Inc. v. Stacy, 384 So.2d 514 (La.App. 2 Cir.1980), where the court found that it had jurisdiction over an out-of-state defendant. However, unlike in the case sub judice, the defendant in Allenberg had the opportunity to litigate the issue of personal jurisdiction in the foreign court. Accordingly, we also find that this case is distinguishable from the case before us.
Last, Ms. Winston relies on Boudreaux v. Welch, 249 La. 983, 192 So.2d 356 (1966), in which the Supreme Court found that, when a person waives service of process and enters a general appearance before a foreign court, this is "sufficient to foreclose the jurisdictional question of res judicata," rendering the foreign judgment unassailable. In Boudreaux, because there was consent to jurisdiction of the foreign court, there was no need for the foreign court to make a specific finding of personal jurisdiction. Unlike in Boudreaux, we find that Mr. Millaud did not consent to jurisdiction in Tennessee, did not waive service of process and did not enter a general appearance before the Tennessee Juvenile Court when he objected to its jurisdiction. Thus, we also find that Boudreaux is inapplicable to the facts at hand.
We find that collateral attack is permitted because the Tennessee Juvenile Court exceeded its power and had no jurisdiction. In determining whether a foreign *151 court had subject matter and/or personal jurisdiction, the law of the forum state that rendered the judgment is the applicable law for resolution of this issue. Holden v. Holden, 374 So.2d 749, 751 (La.App. 3 Cir. 8/23/79); Cantwell Machinery v. Ballard Agency, Inc., 583 So.2d 73 (La.App. 2 Cir. 1991). Thus, we must determine if Tennessee law provides adequate jurisdictional grounds for the decree.
The Tennessee Supreme Court in Brown v. Brown, 198 Tenn. 600, 281 S.W.2d 492, 499 (1955), explained:
While it is well settled that a judgment cannot be questioned collaterally in the exercise of jurisdiction, the rule is equally well established that a judgment may be attacked in a collateral proceeding for error in assuming jurisdiction ... One form of usurpation of power on the part of a court in rendering a judgment is where it attempts to disregard limitations prescribed by law restricting jurisdiction. Where a court is authorized by statute to entertain jurisdiction in a particular case only, and it undertakes to exercise the power and jurisdiction conferred in a case to which the statute has no application, in so doing it will not acquire jurisdiction and its judgment will be a nullity and subject to collateral attack. [Emphasis added]
Under Tennessee law, even where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, if the court undertakes to exercise the power and jurisdiction conferred in a case to which the statute has no application, the parties can still collaterally attack the judgment over the subject matter. To wit, under Tennessee law, should the Tennessee Juvenile Court enter a judgment beyond its powers and/or have usurped power where none existed, the parties can still collaterally attack the judgment for lack of jurisdiction over the subject matter. Thus, we now turn to whether or not the result of the collateral attack was proper.
Louisiana is required to give full faith and credit to judgments of courts in sister states unless the foreign forum lacked jurisdiction over the litigants or over the subject matter involved in the controversy. U.S.C.A. Const. Art. 4, § 1; LSA-C.C.P. Art. 1; Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943); E & L Lumber Co. v. Ashy Enters., Inc., 594 So.2d 948, 949 (La. App. 3 Cir.1992). This rule is so well established that in a suit for the recognition of a foreign judgment, the only issue of the foreign proceeding with which a Louisiana court may concern itself is the question of the foreign court's jurisdiction over the parties or the subject matter involved within that action. Holden v. Holden, 374 So.2d 749 (La.App. 3 Cir. 8/23/79); Rice v. Kliebert, 330 So.2d 374 (La.App. 4 Cir.1976); See also, Abernathy v. Chambers, 482 S.W.2d 129, 132 (Tenn.1972); Harris v. Poole, 688 S.W.2d 78, 81 (Tenn. Ct.App.1984). Although the jurisdiction of a court rendering a judgment is open to judicial inquiry when enforcement of that judgment is sought within this State, there is a general presumption that the decree is valid and the burden of undermining such a judgment rests heavily upon the assailant. Id at 751; Navarrette v. Laughlin, 209 La. 417, 24 So.2d 672 (1946). The burden to establish that the court of the rendering state was without jurisdiction can only be discharged by clear and positive proof. Holden v. Holden, 374 So.2d 749 (La.App. 3 Cir. 8/23/79), citing Turpin v. Turpin, 175 So.2d 357 (La.App. 2 Cir. 1965). We find that there is clear and positive proof that the Tennessee Juvenile Court lacked personal and subject jurisdiction in this matter.
*152 Tennessee courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act. Kane v. Kane, 547 S.W.2d 559, 560 (Tenn.1977); Brown v. Brown, 198 Tenn. 600, 618-19, 281 S.W.2d 492, 501 (1955). Moreover, Tennessee courts cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication. See, Hicks v. Hicks, No. 01A01-9309-CH-00417, 1994 WL 108896, at *2 (Tenn.Ct.App.Mar. 30, 1994) (No Tenn. R.App. P. 11 application filed).
A court's subject matter jurisdiction does not depend on the conduct or agreement of the parties. See, Shelby County v. City of Memphis, 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963). Moreover, the parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver. See, Caton v. Pic-Walsh Freight Co., 211 Tenn. 334, 338, 364 S.W.2d 931, 933 (1963); Brown v. Brown, 198 Tenn. at 618-19, 281 S.W.2d at 501.
Judgments or orders entered by courts without subject matter jurisdiction are void. Id. The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated. County of Shelby v. City of Memphis, 211 Tenn. 410, 365 S.W.2d 291, 292 (1963); See also, Tenn. R.Civ.P. 60.02. Thus, we find that any such orders rendered by a Tennessee court lacking subject matter jurisdiction are a nullity and may be collaterally attacked. Id.
A foreign judgment filed pursuant to Tenn.Code Ann. § 26-6-101 et seq., the Uniform Enforcement of Foreign Judgments Act (hereinafter "UEFJA") "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of record in this state and may be enforced or satisfied in a like manner." Tenn.Code Ann. § 26-6-104(c).
Under Tennessee law, the grounds and procedures for vacating, reopening, or setting aside a judgment are those set out in Tenn. R. Civ. P. 60.02. Remington Investments, Inc. v. Obenauf, 1 S.W.3d 666, 668 (Tenn.Ct.App.1999); Bailey v. Sneed, 49 S.W.3d 327, 329 (Tenn.Ct.App.2001); Coastcom, Inc. v. Cruzen, 981 S.W.2d 179, 181 (Tenn. Ct.App.1998); Biogen Distributors, Inc. v. Tanner, 842 S.W.2d 253, 256 (Tenn.Ct.App.1992).
Rule 60.02 of the Tennessee Rules of Civil Procedure provides in pertinent part:
On motion and upon such terms as are just, the court may relieve a party. . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.
The standard in Tennessee for determining whether a judgment is void is whether a court had general jurisdiction of the subject matter, whether the judgment was wholly outside the pleadings, and whether the court had jurisdiction of the parties. Gentry v. Gentry, 924 S.W.2d 678, 680-81 (Tenn.1996).
*153 The party seeking relief under Rule 60.02 has the burden of showing grounds therefore and entitlement to relief. Spruce v. Spruce, 2 S.W.3d 192, 194 (Tenn.Ct.App.1999); Howard v. Howard, 991 S.W.2d 251, 255 (Tenn.Ct.App.1999).
As in Louisiana, the movant must substantiate entitlement to the request by clear and convincing evidence. Davidson v. Davidson, 916 S.W.2d 918, 923 (Tenn.Ct. App.1995); Duncan v. Duncan, 789 S.W.2d 557, 563 (Tenn.Ct.App.1990). We find that Mr. Millaud has met his burden of proof with respect to the judgment's nullity.
When a foreign judgment is attacked, courts in the state of Tennessee should first examine whether the issue raised in the attack has been fully and fairly litigated in the court rendering the judgment because "a judgment is entitled to full faith and credit  even as to questions of jurisdiction  when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court that rendered the original judgment." Abernathy v. Chambers, 482 S.W.2d 129, 132, quoting Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); Graybar Electric Co., 186 Tenn. at 451, 211 S.W.2d at 904-05.
We agree that under Louisiana law, if a defendant raises the jurisdiction issue in the foreign forum, is given the opportunity to pursue it, and fails to do so, he is precluded from collaterally attacking jurisdiction in the future. See Essex Crane Rental Corp. v. D & L Mach. Works, 93-1656 (La.App. 3 Cir. 10/5/94, 643 So.2d 913), writ denied, 94-2742 (La.1/6/95), 648 So.2d 932. Additionally, where a party enters an appearance and has the opportunity to litigate the jurisdiction question, the Full Faith and Credit Clause applies. See Boudreaux v. Welch, 249 La. 983, 192 So.2d 356 (1966). However, we find that although Mr. Millaud raised the issues of personal and subject matter jurisdiction in the Tennessee Juvenile Court, he was never notified and thus given an opportunity to properly litigate these issues. Moreover, we find that Tennessee lacked the requisite connection to the parties to establish personal and subject matter jurisdiction.
In its written reasons for judgment, the Louisiana district court found "there is no evidence of service of notice upon the defendant or his counsel for the hearing set for December 20, 2002, and neither party nor the minor child resided in the state of Tennessee at any time the request for child support was scheduled, rescheduled, or rendered or signed." The district court ruled that the Tennessee Juvenile Court was without "jurisdiction over David Millaud, which is absolutely essential to render a decision." Thus, the district court declared that the "judgment is not a valid judgment and is not entitled to full faith and credit by Louisiana courts." We agree.
Furthermore, the Full Faith and Credit Child Support Orders Act (hereinafter "FFCCSOA") was signed into law in 1994. See Pub.L. No. 103-383 § 3(a) (1994) (codified at 28 U.S.C. § 1738B). The FFCCSOA is, pursuant to the Supremacy Clause of the United States Constitution, binding on all states and supersedes any inconsistent provision of a uniform state law. U.S. Const. art. VI, cl. 2; See Kelly v. Otte, 123 N.C.App. 585, 589, 474 S.E.2d 131, 134 (1996). The FFCCSOA establishes the standards by which the states can determine their jurisdiction to issue their own support orders and the effect to be given to support orders from other states. The FFCCSOA defines "child support" to *154 mean "payment of money, continuing support, or arrearages or the provision of a benefit (including the payment of health insurance, child care, and educational expenses) for the support of the child."
A "child support order"  (A) means a judgment, decree, or order of a court requiring the payment of child support in periodic amounts or in a lump sum; and (B) includes  (i) a permanent or temporary order; and (ii) an initial order or a modification of an order.
The Tennessee Juvenile Court established Mr. Millaud's duty of support on November 18, 1991. As the Tennessee Juvenile Court had subject matter jurisdiction and personal jurisdiction over the parties because each were residents of the State of Tennessee and gave reasonable notice to the parties, the order entered on November 18, 1991, appears to have been a child support order "made consistently" with the FFCCSOA.
Pursuant to the FFCCSOA, a Tennessee court entering a support order "made consistently" with the FFCCSOA "has continuing, exclusive jurisdiction over the order if the State is the child's State or residence of any individual contestant." Commencing on November 19, 1991, the Tennessee Juvenile Court had continuing exclusive jurisdiction over its order establishing Mr. Millaud's duty of support.
In 1993, Mr. Millaud moved from Tennessee and went to reside in the State of California. In 1995, Ms. Winston and the minor child moved from Tennessee and went to reside in the State of California. We find it significant that on the date the Petition to Set Child Support was filed in Tennessee, all parties were and/or had for at least two years been residents of the State of California. Through her Petition, Ms. Winston sought to modify the prior child support order.
A subsequent order modifies a prior child support order if it changes or otherwise affects, directly, or indirectly, the amount, scope, or duration of a parent's child support obligation as determined under the prior order. See 28 U.S.Code § 1738B (b). "A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order." See U.S.Code § 1738B (d). The continuing, exclusive jurisdiction aspect of the FFCCOSA comprehends that before an order "made consistently" with the Act may be modified, at the time such relief is sought, the forum state must be the residence of at least one of the persons most directly affected. Because all parties concede that no one was a resident of the State of Tennessee at the time of the filing of the proceeding to set child support or anytime thereafter, we find that the State of Tennessee did not have exclusive continuing jurisdiction. Thus, the Tennessee Juvenile Court lacked statutory authority to exercise its subject matter jurisdiction to enter an order establishing the amount, scope, or duration of Mr. Millaud's child support obligation having lost its continuing exclusive jurisdiction to modify its own order of November 18, 1991.
Additionally, subsection (i) of the FFCCSOA provides that where:
There is no individual contestant or child residing in the issuing State, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the nonmovant for the purpose of modification. See 28 U.S.Code § 1738B (i).
*155 We also note that the Uniform Child Custody Jurisdiction Law, La. R.S. 13:1702 provides in pertinent part:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships ...
"Home state" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months." La. R.S. 13:1701(5).
While a child's "home state" arguably provides a strong basis for jurisdiction, courts have acknowledged that jurisdiction may exist concurrently in more than one state under an alternative basis. In Revere v. Revere, 389 So.2d 1277 (La.1980), the court addressed the "significant connection standard" under La. R.S. 13:1702(A)(2). The court stated that, "this standard provides a best interest basis for jurisdiction when Louisiana has a legitimate concern as to custody and has superior access to evidence concerning the child's care, training, well being, and personal relationships." Revere, supra, at 1279, 1280. The court further noted that a state, which claims jurisdiction on the basis of significant connections, need not defer to the home state in every case. Id.
We note that in deciding the most favorable jurisdiction to resolve issues of custody, the UCCJA has primarily focused on the strength of the connection between the minor child and the state. Amin v. Bakhaty, 01-1967 (La.10/16/01), 798 So.2d 75, 81. However, Louisiana courts have generally held that the limitations imposed by the UCCJA are equivalent to declarations of subject matter jurisdiction necessitating that the jurisdictional requirements of the UCCJA be met at the time the custody request is filed. Id. Therefore, in order for a Tennessee court to assume jurisdiction in matters of child custody, it must be demonstrated that Tennessee has the strongest connections to the child at the time of the filing. We find this reasoning applicable to the issue of child support modifications as well.
In the present case, the fact that California was the child's "home state" at the time Ms. Winston filed for child support and past arrearages is not in dispute. La. R.S. 13:1701(5). While we recognize that the court in California would have jurisdiction under La. R.S. 13:1702(A)(1), it is necessary to determine whether Tennessee has significant connections to the child sufficient to establish jurisdiction.
We find that not only did the State of Tennessee not have "significant connections" to the minor child, but that its connections to the child are tenuous at best. All parties concede that neither parent, nor the minor child has lived in the State of Tennessee since approximately 1995. The record reflects that Ms. Winston's Petition *156 was filed on December 17, 1997, while all parties resided in the State of California. Accordingly, we also find that the State of Tennessee lacked the requisite connections to the minor child as required by the UCCJA.

DECREE
The district court did not err in denying Ms. Winston's Petition to Make the Foreign Judgment Executory, and thus staying the matter. Therefore, the district court's judgment is AFFIRMED.
AFFIRMED.
NOTES
[1] The Uniform Child Custody Jurisdiction Law, La. R.S. 13:1700, et seq. was enacted to avoid jurisdictional competition and instead to promote interstate cooperation, assistance, and the exchange of information in child custody decisions and decrees. Martin v. Martin, 545 So.2d 666, 668 (La.App. 5 Cir.1989).
[2] Personal jurisdiction refers to "the legal power and authority of a court to render a personal judgment against a party to an action or proceeding." La.Code Civ. Proc. Art. 6.
[3] Subject matter jurisdiction is defined by La. Code Civ. Proc. Art. 2 as "the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted."