SANDRA CABRINA JENKINS, Judge.
|! James W. Raine, Sr. appeals the trial court’s July 9, 2015 judgment denying his petition to annul the June 26, 2001 judgment ordering him to pay child support. Finding no manifest error' in the trial court’s judgment, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
In July, 2000, Keva Raine filed a petition for divorce against James W. Raine, Sr. pursuant to La. C.C. art. 103(1). The petition alleged that the couple was married on June 25, 1998, two children were born of the marriage, and the couple had physically separated and lived separate and apart since October, 1999. In her petition, Ms. Raine sought a judgment of divorce, custody of the two children, and child support.
On October 4, 2000, Mr. Raine executed an affidavit of Acceptance of Service and Waiver of Citation and All- Delays. Mr. Raine attested to his acceptance of service of the petition, waived the necessity of issuance and service of citation, waived the necessity of being given notice of trial and appearance at 12trial, and further waived the necessity of being given notice of the signing of judgment.
On December 28, 2000, the trial ■ court signed a judgment granting the divorce but naming the plaintiff erroneously as Gwendolyn Lindsey Profit.[1] Subsequently, on April 5, 2001, Ms. Raine filed a motion for child support, for sole custody, for a restraining order, and to correct the divorce decree. The motion was originally set for a hearing on June 5, 2001; on that date, the hearing was- continued to June 19, 2001 by an order signed by the minute clerk. The June 5, 2001 order also includes two other signatures — one of which appears to read “James W. Raine Sr.”— waiving further notice of the June 19, 2001 hearing.
On June 19, 2001, the trial court held the hearing on Ms. Raine’s motion and entered judgment in her favor on June 26, 2001. That judgment granted sole custody of the two children to Ms. Raine, granted her a restraining order against Mr. Raine, corrected the divorce decree, and ordered Mr. Raine to pay child support in the amount of $492.80 a month. The judgment also indicates that Ms. Raine and her attorneys were present for the June 19, 2001 hearing, at which time judgment was entered in open court, but neither Mr. Raine nor an attorney representing him were present.
On September 21, 2001, Ms. Raine filed a motion for contempt against Mr. Raine for failure to pay child support as ordered by the June 26, 2001 judgment. The trial court set the contempt rule hearing for October 22, 2001. On that date, |sthe record indicates that Mr. Raine was served with notice of the June 26, 2001 judgment in open court,[2] and the contempt rule was continued to - November 20, 2001 by an order signed by the minute clerk. The October 22, 2001 order also includes four signatures waiving further notice of the November 20, 2001 hearing.
On November 20, 2001, the trial court held the contempt rule hearing and judgment was entered against Mr. Raine. The trial court’s judgment, signed February 15, *856 2002, found Mr. Raine in contempt of court for violating the June 26, 2001 judgment, ordered him to make partial payment of arrearages, and ordered him to abide by the child support order within the June 26, 2001 judgment. The judgment also indicates that both Ms. Raine and Mr. Raine were present and she was represented by an attorney at the hearing.
On September 18, 2014, Mr. Raine filed a petition to annul the June 26, 2001 judgment on the basis that it was an invalid judgment. In his petition, Mr. Raine alleged that he was not present or served with notice of the June 19, 2001 hearing at which the trial court entered judgment against him and ordered him to pay child support. Mr. Raine further alleged that it was not his signature on the June 5, 2001 order indicating waiver of notice of the June 19, 2001 court date. In support of his allegations, Mr. Raine attached a copy of the June 5, 2001 waiver of notice and a Septembér 5,' 2014 report from Adele Thonn, a Forensic Document Examiner, regarding her examination of Mr. Rhine’s signature on the waiver in comparison to his signature on six other documents per Mr. Raine’s request.
|4On June 30, 2015, the trial court held a hearing on Mr. Raine’s petition to annul the June 26, 2001 judgment. The trial court heard testimony from Mr, Raine, Ms. Raine, and Adele Thonn, who was accepted as an expert in Forensic Document Examination. At the conclusion of the hearing, the trial court denied the petition to annul. The trial court signed the judgment denying the petition to annul on July 9, 2015 and, subsequently, issued written reasons for judgment on September 1,2015.
Mr. Raine now appeals the trial court’s July 9, 2015 judgment denying his petition to annul the June 26, 2001 judgment.
STANDARD OF REVIEW
When reviewing a trial court’s judgment on a petition to annul, the appellate court does not review, whether the judgment was right or wrong but whether the trial court’s findings were reasonable. Richard v. Richard, 14-1365, p. 3 (La.App. 4 Cir. 6/3/15), 171 So.3d 1097, 1100, citing West v. Melancon, 05-1183, p. 3 (La.App. 4 Cir. 4/26/06), 929 So.2d 809, 811; Belle Pass Terminal, Inc. v. Jolin, Inc., 01-0149, p. 6 (La.10/16/01), 800 So.2d 762, 766. The trial court’s factual findings are.reviewed under the manifest error standard. Richard, 14-1365, p. 4, 171 So.3d at 1100. Applying the manifest error standard of review, in order to reverse a trial court’s determinations of fact, the appellate court must review the entire record and conclude that (1) a reasonable factual basis does not exist for the trial court’s finding, and (2) the record establishes that the finding is clearly wrong or | ^manifestly erroneous. Lomont v. Bennett, 14-2483, p. 16 (La.6/30/15), 172 So.3d 620, 632-33.
While the trial court’s factual findings are subject to manifest error review, appellate review of questions of law is simply a determination of whether the trial court was legally correct or incorrect in its application of the law. Rickard, 14-1365, p. 3, 171 So.3d at 1100; Cannizzaro ex rel. State v. American Bankers Ins. Co., 12-1455, 12-1456, p. 3 (La.App. 4 Cir. 7/10/13), 120 So.3d 853, 856. The appellate court gives no special weight to the trial court’s findings on questions of law, but exercises its constitutional duty to review questions of law de novo and render judgment on the record. Winston v. Millaud, 05-0338, p. 5 (La.App. 4 Cir. 4/12/06), 930 So.2d 144, 150, citing Cacamo v. Liberty Mutual Fire Ins. Co., 04-0074-78 (La.App. 4 Cir. 9/29/04), 885 So.2d 1248, 1255, and Gonzales v. Xerox Corp., 254 La. 182, 320 So.2d 163, 165 (1975).
*857 DISCUSSION
The grounds for an action in nullity are provided exclusively under La. C.C.P. art. 2001, et seq. Golden v. Slack, 524 So.2d 175, 178 (La.App. 4th Cir.1988); C.I.T. Leasing Corp. v. Bar-Tender of La., Inc., 258 So.2d 228, 280 (La.App. 4th Cir.1972). Louisiana law recognizes two types of nullity of judgment: (1) absolute nullity, ie., null for vice of form, pursuant to La. C.C.P. art. 2002; and (2) relative nullity, ie., null for vice of substance, pursuant'to La. C.C.P. art. 2004. Dauzat v. Louisiana Patient’s Compensation Fund, 97-1318, 97-1319, p. 3 (La.App. 4 Cir. 12/17/97), 710 So.2d 1088, 1090.
| (¡Under La. C.C.P. art. 2002(A), a .final judgment shall be annulled if the trial court finds that it was rendered as follows:
(1) Against an incompetent person not represented as required by law.
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
(3) By a court which does not have jurisdiction over the subject matter of the suit.
An action to annul a final judgment based on these grounds may be brought at any time. La. C.C.P. art. 2002(B). However, “[a] defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002.” La. C.C.P. art. 2003; see La. C.C.P. art. 2002(B).
■ In this appeal, Mr. Raine argues that the June 26, 2001 judgment is an absolute nullity under La. C.C.P. art. 2002(A)(2) because that judgment was rendered against him without service of process as required by law and without a valid waiver of service. Specifically, Mr. Raine argues that he did not sign the June 5, 2001 waiver of notice for the June 19, 2001 hearing on the motion for child support and that the uncontroverted testimony and evidence shows- that he did not receive service or waive notice of the hearing at which the judgment of child support was rendered against him. Mr. Raine further argues that the trial court disregarded the testimony and evidence presented at the hearing on 'the petition to annul and that there is no reasonable factual basis to support the trial court’s [judgment. Thus, Mr. Raine argues that the trial court manifestly erred in denying his petition to annul the June 26,2001. judgment.
' At the hearing on his petition to annul, Mr. Raine testified that he did not have notice to appear in court for the June 19, 2001 hearing on the motion for child support..and he was not present when the judgment of child support was rendered against him. Mr. Raine also denied being present on June 5, 2001 when the order of continuance and .waiver of notice was ■ signed. While he acknowledged that the June: 5, .2001 order reflects a waiver of notice with a signature of “James W. Raine Sr.,” he testified, that it was not his signature. Mr. Raine insisted throughout his testimony that he did not receive notice of the June 19, 2001 hearing on the motion for child support and, more than once, asserted that his signature had been forged on the June 5, 2001 order waiving notice of that hearing.
Regarding his notice of the - June 26, 2001 judgment ordering him to pay child support, Mr. Raine gave conflicting testimony.- Mr.' -Raine stated that he received “papers to come to court in October for contempt but I knew nothing about child support before then” and “[w]hen I came to court on the 22nd, that’s when I found *858 out about the judgment.” However, when asked by the trial court about receiving a copy of the June 26, 2001 judgment from Judge Madeleine Landrieu in open court on October 22, 2001, Mr. Raine denied coming to court in October; he stated, “I didn’t come down here in October. [ ... ] I didn’t get a copy. I told you I didn’t get any paperwork.” Mr. Raine testified that he did come to court | swith an attorney for the contempt hearing, held on November 20, 2001, and that is when he learned that he was in arrears of child support.
When asked by the trial court !if he ever paid any child support in compliance with the June 26, 2001 judgment and November 20, 2001 contempt ruling, Mr. Raine denied making any child suppdrt payments voluntarily. However, Mr. Raine acknowledged that the State of Louisiana has enforced the child support order and garnished his wages and taxes.[3]
• In support of his argument that he did not sign the June 5, 2001 waiver of notice, Mr. Raine also offered the testimony of Adele Thonn, a Forensic Document Examiner. Ms. Thonn testified that Mr. Raine retained her for the purpose of examining two contested signatures and rendering an opinion-as to whether the contested signatures were authentic. Ms. Thonn stated that Mr. Raine provided her two documents on which he contested the signatures appearing as “James W. Raine, Sr.”: (1) a copy of the June 5, 2001 order for continuance with waiver of further notice; and (2) a copy of the October 22, 2001 order for continuance with waiver of further notice. Ms. Thonn explained her procedure for forensic document examination and then described her process in this case. Ms. Thonn testified that she requested “known exemplars” of Mr. Raine’s signature contemporaneous to the contested signatures and Mr. Raine provided her with signature exemplars from October, 2000; February, 2003; January, 2010; and InOctober, 2010. Based upon her examination of the contested and known signatures submitted to her, Ms. Thonn stated that in her professional opinion, “indications exist that the writer of the known James W. Raine’s signatures did not write the signatures on the questioned document[s].” On cross-examination, Ms. Thonn acknowledged that a person’s handwriting can change over the years and there was a large gap of time between most of the ' known exemplars and the contested signatures.
Mr. Raine also introduced into evidence a copy of Ms. Thonn’s signature examinations report, dated September 5, 2014. The report provides details of the process Ms. Thonn followed in examining the handwriting samples and states her findings and her opinion as to whether the contested signatures were written by the ' writer of the known exemplars. As testified to at the hearing, Ms. Thonn’s opinion as to the signatures is stated as follows: “Indications exist that the writer of the Known James W. Raine signatures Did Not write the signatures on the Questioned documents.” [Emphasis in original.] In the conclusion of the report, it states that Ms. Thonn’s opinion is based solely on the evidence presented to her for examination and such opinion may be subject to modification if presented with other evidence.
Ms. Thonn’s report also lists and defines the “[r]ecommended terminology of the American Society for Testing and Materi *859 als in expressing opinions resulting from handwriting examinations!!]” Based on the level of confidence of the examiner, the opinion terminology ranges from “Identification,” which expresses | inthe “highest degree of confidence” by the document examiner “that the writer of the known material actually wrote the writing in question,” to “Elimination,” which expresses the “highest degree of confidence” that the examiner has “no doubt in his opinion that the questioned and known writings were not written by the same individual.” Between these two highest degrees of confidence, the terminology scale ranges as follows: Strong Probability; Probable; Indications; No Conclusion; Indications Did Not; Probably Did Not; and Strong Probability Did Not. The opinion terminology “Indications Did Not,” which Ms. Thonn used to express her opinion of the James W. Raine signatures, expresses “a very weak opinion” based on the limited features within the body of writing examined.
At the conclusion of the hearing on the petition to annul, the trial court provided brief findings and rendered judgment denying Mr. Raine’s petition to annul the June 26, 2001 judgment. The trial court noted that Mr. Raine was served with notice of the child support judgment in open court on October 22, 2001, that he was subsequently found in contempt of the same judgment, and that the child support judgment was confirmed for enforcement in the 22nd Judicial District Court on February 15, 2002. The trial court also noted that at no time between the date of the judgment of child support and the filing of the petition to annul on September 18, 2014, did Mr. Raine timely challenge the paternity of the children. Thus, the trial court found that Mr. Raine is the legal father of the two children born of the marriage and that there is a valid judgment of child support of which Mr. Raine had notice.
Inin its written reasons for judgment, the trial court stated its findings based on the record and the testimony presented at the hearing on the petition to annul. The trial court noted that the signature in question is from 2001 and exists on the same form as the signature of the minute clerk of the court, that Mr. Raine did not testify as to who he believed wrote the signature that he contends is not his, that Ms. Thonn testified that signatures may change over a significant period of time and that the signatures she examined were from several years apart, and that Ms. Thonn’s opinion that Indications Did Not Exist is a very weak opinion. In consideration of the record and testimony, the trial court then found that the default judgment for child support that was rendered against Mr. Raine at the June 19, 2001 hearing and signed on June 26, 2001 was a valid and enforceable judgment. Thus, the trial court found that Mr. Raine failed to show that the June 26, 2001 judgment was an absolute nullity pursuant to La. C.C.P. art. 2002(A)(2) and, consequently, the trial court denied his petition to annul that judgment.
Upon our review of the record, we find no manifest error in the trial court’s findings or judgment. As the trial court noted, the record contains an order, signed by the minute clerk, continuing the hearing on the motion for child support to June 19, 2001 with a waiver of further notice showing the signatures of James W. Raine, Sr., and Charles Williams, Ms. Raine’s attorney. Despite Mr. Raine’s assertion more than ten years later that he did not sign that waiver of notice, the trial court did not find the testimony and evidence offered in support of that assertion to be sufficient to prove that the June 26, 2001 judgment was an absolute nullity | ^pursuant to La. C.C.P. art. 2002(A)(2). *860 The trial court’s findings are based on its determination of the credibility of the witnesses and the weight of the evidence and, in light of this record; we find no manifest error in the trial court’s judgment.[4]
CONCLUSION
For the reasons stated above, we affirm the trial court’s July 9, 2015 judgment denying Mr. Raine’s petition to annul the June 26, 2001 judgment. ■
AFFIRMED

. Ms. Profit’s name is crossed out in the judgment and Ms. Raine’s name is handwritten in its place. The record does not reflect who made this change or when it was made.

. The copy of the June 26, 2001 judgment within the record shows a stamp stating, "Defendant [Mr. Raine] served with notice of judgment in open court this 22 day of October, 2001.”

. The record includes Notice of Confirmation for Enforcement, issued on July 17, 2014, by the 22nd Judicial District Court in St. Tammany to the Clerk of Court for Orleans Parish Civil District Court, indicating that the child support order rendered on June 26, 2001 was registered for enforcement in St. Tammany Parish.

. Although Mr, Raine’s claims were raised and denied on the basis of La. C.C.P. art. 2002(A)(2), we note that Mr. Raine’s petition to annul alleges that the signature on the June 5, 2001 waiver of notice was not his and, during the hearing, Mr, Raine asserted that the signature was a forgery. Significantly, while Mr. Raine’s allegation that he did not receive proper service or waive service is grounds for an absolute nullity pursuant to La. C.C.P. art, 2002, “[a]n alleged forgery has an element of fraud, and is thus a vice of substance that is grounds for a relative nullity.” Knox v. West Baton Rouge Credit, Inc., 08-1818, p, 6 (La.App. 1 Cir. 3/27/09), 9 So.3d 1020, 1024. Whereas an action to annul based on a vice of form or absolute nullity may be brought at ,any time, an action to annul for a vice of substance or relative nullity must be brought within one year of the discovery of the fraud or ill practice. La. C.C.P. art, 2002(B); La. C.C.P. art. 2004. “Whenever there is notice enough to excite attention, put a person on guard, or suggest further investigation, this is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead,” Knox, 08-1818, p. 7, 9 So.3d at 1025; see Campo v. Correa, 01-2707, p. 12 (La.6/21/02), 828 So.2d 502, 510-11. In this case, Mr. Raine was personally served with a copy of the June 26, 2001 judgment in open court on October 22, 2001, and he was present for the contempt hearing on November 20, 2001 at which he was held in contempt for violating the June 26, 2001 judgment. In consideration of these facts, Mr. Raine. should have discovered through the exercise of reasonable diligence any potential fraud or ill practice within one year of that date- and raised his claim of forgery by an action to annul for vice of substance or relative nullity pursuant to La. C.C.P. art. 2004. Consequently, an action to annul based on a claim that the waiver signature was a forgery would have been prescribed long before September of 2014, when Mr.- Raine filed his petition to annul.